UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. **17-20780**

CR-COOKE

/GOODMAN

18 U.S.C. § 371
18 U.S.C. § 201(b)(1)(C)
18 U.S.C. § 201(b)(2)(C)
18 U.S.C. § 1001(a)(2)
18 U.S.C. § 1343
18 U.S.C. § 1028A
18 U.S.C. § 981(a)(1)(C)

UNITED STATES OF AMERICA

vs.

PATRICIA SUAREZ,
         a/k/a "Patricia Bailly,"
         a/k/a "Patricia Del Castillo,"
and
MANUEL R. FERNANDEZ,

                    Defendants.
_____/

## INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At all times material to this Indictment:

1.      The Federal Aviation Administration ("FAA") was an executive branch agency of

the United States Department of Transportation ("DOT").    The FAA was responsible for ensuring

the safety of aircraft operations in the United States, including the safety and airworthiness of all

domestic aircraft and their component parts, and the safety of persons that operate domestic

aircraft.

2.      The FAA employed Aviation Safety Inspectors (hereinafter "ASIs"), who were

1

"public officials" as defined within 18 U.S.C. § 201(a)(1). ASIs applied a broad knowledge of the aviation industry, general principles of aviation safety, and federal laws, regulations, and policies affecting aviation, including technical knowledge and skills in the operation and maintenance of aircraft. An ASI's duties and responsibilities included, but were not limited to, the following: inspecting FAA Repair Stations; oversight of aviation operations, avionics, and maintenance; and developing and administering federal regulations and safety standards as to aircraft operation, airworthiness, maintenance, and related equipment.

3.      Under 49 C.F.R. § 99.735-1, ASIs were subject to executive branch-wide Standards of Ethical Conduct at 5 C.F.R. § 2635, DOT regulations at 5 C.F.R. § 6001, and executive branch-wide standards and the executive branch-wide financial disclosure regulations at 5 C.F.R. § 2634. Pursuant to 5 C.F.R. § 2635.702, ASIs were prohibited from using their public office for their own private gain, for the endorsement of any product, service and enterprise, and for the private gain of friends, relatives, and persons that an ASI was affiliated with in a non-governmental capacity, including persons with whom the ASA had and sought employment or business relations. Additionally, pursuant to 5 C.F.R. § 2635.702(a), ASIs were prohibited from using and permitting the use of their governmental position and title, including any authority associated with their public office, in a manner that was intended to coerce and induce another person to provide any benefit, financial or otherwise, to the ASI and to friends, relatives, and persons with whom the ASI was affiliated in a non-governmental capacity.

4.      Pursuant to 5 C.F.R. § 2635.802, ASIs were prohibited from engaging in outside employment and any other outside activity that conflicted with their lawful and official duties, including those activities prohibited by statute and by an agency supplemental regulation and

would require the employee's disqualification from matters so central or critical to the performance of his official duties that the employee's ability to perform the duties of his position would be materially impaired.

5.      On a yearly basis, ASIs were also required to complete and submit to the FAA Office of Government Ethics ("OGE") Forms 450 and 450-A and state, among other matters, any outside financial interests, single source gifts exceeding $250, and compensated and uncompensated outside employment, including future employment agreements.   Pursuant to 5 C.F.R. § 2635.802, ASIs were prohibited from, directly and indirectly, soliciting and accepting gifts from prohibited sources and because of the ASI's official position.   Under 5 C.F.R. § 2625.803, prohibited sources were, among others, any persons who: sought official action by the FAA; did business and sought to do business with the FAA; conducted activities regulated by the FAA; and had interests that could have been substantially affected by performance or nonperformance of the ASI's lawful and official duties.

6.      Pursuant to FAA Orders 3750.7, 3750.7A, and 8900.1 and Federal Aviation Personnel Manual Letter 2635, ASIs were expressly prohibited from engaging in outside and part-time employment where the outside employer operated under the jurisdiction of the ASI's FAA office and facility and conducted activities for which the ASI's FAA facility or office had official responsibility, including inspection, air traffic control, licensing, certification, and other official contact.

7.      Pursuant to FAA Order 8900.1 and Federal Aviation Personnel Manual Letter 2635, ASIs were prohibited from disclosing and discussing any classified information and official use only information, unless specifically authorized to do so and required in the proper discharge

3

of lawful and official duties.    ASIs were required to observe the laws, rules, regulations, and other authoritative instructions and report any known and suspected violations of law, regulations, and policy through the appropriate channels.    ASIs were prohibited from: engaging in off-duty criminal conduct; divulging any official information obtained through or in connection with their government employment to any unauthorized person; releasing any official information in advance of the time prescribed for its authorized issuance; and using and permitting others to use any official information for private purposes that is not available to the general public.    Additionally, under 5 C.F.R. § 2635.703(a), ASIs were also prohibited from engaging financial transactions using non-public information, including allowing the improper use of non-public information to further their own private interest and the private interests of others, whether through advice or recommendation, or by knowing unauthorized disclosure.

8.      Pursuant to the FAA Human Resources Policy Manual, LWS-8.1, ASIs were entitled paid sick leave when they were incapacitated and could not perform their essential duties due to illness, medical condition, and injury, including medical examinations and treatment. When submitting sick leave requests exceeding three (3) consecutive works days, ASIs were required to furnish accompanying medical documentation.    ASIs working outside of their FAA position during approved sick leave were also required to notify the approving official.    If the ASI could have reasonably worked in their FAA job, sick leave was not authorized.

9.      AVCOM Avionics and Instruments, Inc. ("AVCOM") was a Florida corporation with its principal place of business in Miami-Dade County, Florida.    Under 14 C.F.R. § 145, AVCOM was a FAA-Certificated Repair Station.    AVCOM was licensed to perform repairs, tests, and overhauls, including returns of certain avionics accessories, instruments, and radio class

4

equipment.    AVCOM was subject to the jurisdiction and official responsibility of the FAA South

Florida Flight Standards District Office ("FSDO") located in Miramar, Florida.    Under 5 C.F.R.

§ 2625.803, AVCOM was also a prohibited source for purposes of FSDO ASIs soliciting and

accepting gifts.

10.    Pursuant to 14 C.F.R. § 145.109, AVCOM was required to maintain current

maintenance manuals, overhaul manuals, standard practices manuals, and service bulletins relating

to data prescribed by original equipment manufacturers (hereinafter collectively "OEMs") for

aviation parts, equipment, and other components in order to perform maintenance, repairs, and

alterations (hereinafter collectively "OEM technical publications").    OEM technical publications

typically contained confidential, proprietary, copyrighted, and trade secret material and were

generally required to be obtained and purchased directly from OEMs at prices ranging from

approximately $100 to $15,000 per publication.    The term "unauthorized OEM technical

publications" refers to publications that were not directly purchased from the OEMs, obtained

without the OEMs' knowledge, consent, permission, and authorization, and which contained trade

secrets as defined within 18 U.S.C. § 1839(3).    Additionally, pursuant to 18 U.S.C. §§ 1832(a)(1)-

(3), AVCOM was prohibited from knowingly stealing, buying, receiving, possessing, copying, and

altering unauthorized OEM technical publications that contained trade secrets.

11.    Honeywell International Inc. (hereinafter "Honeywell"), Rockwell Collins Inc.,

Avionic Instruments LLC, Airbus, The Boeing Company, Gables Engineering Inc., GE Aviation,

UTC Aerospace Systems, Goodrich Corp., Hamilton Sundstrand, Messier-Bugatti, Sextant

Avionique, Thales Avionics, and SFENA Corp. were OEMs that owned trade secrets, as defined

within 18 U.S.C. § 1839(3), that were related to a product and service used, and intended for use,

in interstate and foreign commerce.

12.     JP Morgan Chase Bank ("JPMC") was a financial institution, as defined within 18 U.S.C. § 20 and 31 U.S.C. § 5312(a)(2), with offices located throughout the United States, including in the State of Florida, and whose accounts were insured by the Federal Deposit Insurance Corporation ("FDIC").

13.     Bank of America ("BoA") was a financial institution, as defined within 18 U.S.C. § 20 and 31 U.S.C. § 5312(a)(2), with offices located throughout the United States, including in the State of Florida, and whose accounts were insured by the FDIC.

14.     Citibank, N.A. ("Citibank") was a financial institution, as defined within 18 U.S.C. § 20 and 31 U.S.C. § 5312(a)(2), with offices located throughout the United States, including in the State of Florida, and whose accounts were insured by the FDIC.

15.     Defendant **PATRICIA SUAREZ** was a resident of Miami-Dade County, Florida, a co-owner, officer, and director of AVCOM, and the wife of Rolando Suarez.

16.     Defendant **MANUEL R. FERNANDEZ** was a resident of Miami-Dade County, Florida, served as an ASI with the FAA South Florida FSDO, and was a "public official" as defined within 18 U.S.C. § 201(a)(1).

17.     Rolando Suarez was a resident of Miami-Dade County, Florida, a co-owner, officer, and director of AVCOM, and the husband of **PATRICIA SUAREZ.**

18.     J.F. was a resident of Miami-Dade County, Florida, and a relative of **MANUEL R. FERNANDEZ.**

19.     J.T.J. was a resident of Georgia and an employee of Delta Airlines.

## COUNT 1
### Conspiracy to Commit an Offense Against the United States
### (18 U.S.C. § 371)

1.      Paragraphs 1 through 19 of the General Allegations section of this Indictment are re-alleged and incorporated by reference as through fully set forth herein.

2.      Beginning no later than in or around January 2010, and continuing through on or about June 28, 2013, in Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the defendants,

**PATRICIA SUAREZ,**
**a/k/a "Patricia Bailly,"**
**a/k/a "Patricia Del Castillo,"**
**and**
**MANUEL R. FERNANDEZ.**

did knowingly and willfully combine, conspire, confederate, and agree with each other, Rolando Suarez, and other persons known and unknown to the Grand Jury to commit offenses against the United States, that is:

(a)      to, directly and indirectly, corruptly give, offer, and promise anything of value to a public official and to any other person, with intent to induce the public official to do an act and omit to do an act in violation of the public official's lawful duty; that is, directly and indirectly, corruptly giving, offering, and promising to **FERNANDEZ** and other persons, things of value with intent to induce **FERNANDEZ** to do acts and omit to do acts in violation of his lawful duty, in violation of Title 18, United States Code, Section 201(b)(1)(C); and

(b)      to, being a public official, directly and indirectly corruptly demand, seek, receive, accept, and agree to receive and accept anything of value personally and for any other person, in return for being induced to do an act and omit to do an act in violation of the public

7

official's official duty; that is, **FERNANDEZ**, directly and indirectly, demanded, sought, received, accepted, and agreed to receive and accept things of value, personally and for any other person, from **PATRICIA SUAREZ** and Rolando Suarez in return for **FERNANDEZ** being induced to do acts and omit to do acts in violation of his official duty, in violation of Title 18, United States Code, Section 201(b)(2)(C).

## PURPOSE OF THE CONSPIRACY

3.      It was the purpose of the conspiracy for the defendants and their co-conspirators to use the official position of **MANUEL R. FERNANDEZ** as an FAA ASI to benefit and enrich themselves, and the personal and business interests of **PATRICIA SUAREZ** and Rolando Suarez, through bribery and other unlawful means.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendants and their co-conspirators sought to accomplish the objects and purpose of the conspiracy, included, among other things, the following:

4.      **PATRICIA SUAREZ** and Rolando Suarez corruptly gave, offered, and promised, and **MANUEL R. FERNANDEZ** corruptly demanded, sought, received, accepted, an agreed to receive and accept from **PATRICIA SUAREZ** and Rolando Suarez, things of value, including cash, income, credit cards, vacation cruises, airline tickets, and other monetary payments and items of value, in exchange for **FERNANDEZ** violating his and lawful and official duties by providing AVCOM with unauthorized OEM technical publications, providing AVCOM with notice and warnings as to FAA inspections and investigations regarding AVCOM and its competitors, disclosing to AVCOM sensitive and confidential information regarding AVCOM's competitors, and concealing and failing to report AVCOM legal, regulatory, and policy violations to the FAA.

8

5.      **PATRICIA SUAREZ** and Rolando Suarez issued and cashed, and caused to be issued and cashed, various AVCOM checks, all made out to "Petty Cash."   Additionally, **PATRICIA SUAREZ** and Rolando Suarez converted various of their own AVCOM paychecks, into cash proceeds.   Thereafter, **PATRICIA SUAREZ** and Rolando Suarez provided, and caused to be provided, thousands of dollars in cash proceeds to **MANUEL R. FERNANDEZ** that were deposited in various bank accounts owned and controlled by J.F. and **FERNANDEZ**.

6.      **MANUEL R. FERNANDEZ**, while serving as a FAA ASI at the FAA South Florida FSDO, provided various employment services and favors for AVCOM in order to better understand its clients, competitors, and business practices and operations.   **FERNANDEZ** corruptly utilized this knowledge in order to better provide AVCOM with notice and warnings as to FAA inspections and investigations regarding AVCOM and its competitors, disclose to AVCOM sensitive and confidential information regarding AVCOM's competitors, and conceal and fail to report AVCOM legal, regulatory, and policy violations.

7.      Among other violations of his lawful and official duties as an ASI, **FERNANDEZ** obtained and provided various unauthorized OEM technical publications to **PATRICIA SUAREZ,** Rolando Suarez, and others working at AVCOM.   In order to further disguise the scheme, **PATRICIA SUAREZ** and **FERNANDEZ** directed other AVCOM employees to delete, alter, and erase any wording, warnings, and advisories from the unauthorized OEM technical publications that indicated confidential, proprietary, copyrighted, and trade secret material, all of which **FERNANDEZ** failed to report to, and concealed from, the FAA.

8.      **PATRICIA SUAREZ** and Rolando Suarez corruptly submitted, and caused to be submitted, documents to AVCOM's payroll provider falsely and fraudulently establishing that

9

**MANUEL R. FERNANDEZ's** relative, J.F., was an AVCOM employee.  **PATRICIA SUAREZ** and Rolando Suarez provided thousands of dollars in monetary payments to **FERNANDEZ** by issuing AVCOM paychecks in J.F.'s name and initiating AVCOM direct deposits to bank accounts owned and controlled by **FERNANDEZ** and J.F.   Additionally, **PATRICIA SUAREZ** and Rolando Suarez issued various AVCOM checks made out directly to **FERNANDEZ**, which were deposited in various bank accounts owned and controlled by **FERNANDEZ.**

9.     To further disguise the scheme, **MANUEL R. FERNANDEZ's** submitted materially false OGE Form 450 and 450-A to the FAA and DOT concealing his AVCOM payments and activities.   **FERNANDEZ** directed J.F. to visit AVCOM in order be able to describe AVCOM's facilities in the event of any FAA, DOT, and law enforcement investigation. **FERNANDEZ** also directed J.F. to provide materially false information about her purported AVCOM employment, including **FERNANDEZ's** activities at AVCOM while serving as an FAA ASI, to investigators in the event of any FAA, DOT, and law enforcement investigation.

<u>**OVERT ACTS**</u>

In furtherance of the conspiracy, and to accomplish its objects and purpose, at least one conspirator committed and caused to be committed, in the Southern District of Florida, and elsewhere, at least one of the following overt acts, among others:

1.     On or about February 5, 2010, **MANUEL R. FERNANDEZ** submitted to the FAA and DOT an OGE Form 450-A "Confidential Certificate of No New Interests" falsely and fraudulently certifying, since his last yearly filing, that **FERNANDEZ** had: no new reportable assets and sources of income; no new reportable outside positions; no new reportable agreements

10

and arrangements concerning future, current, and past non-Government employment; and no new reportable gifts or travel reimbursements.

2.      On or about June 25, 2010, Rolando Suarez issued and caused to be cashed AVCOM check #41610, which was made out to "Petty Cash," in the amount of approximately $1,700.

3.      On or about July 9, 2010, **PATRICIA SUAREZ** issued and caused to be cashed AVCOM check #41640, which was made out to "Petty Cash," in the amount of approximately $1,250.

4.      On or about July 16, 2010, Rolando Suarez issued and caused to be cashed AVCOM check #41665, which was made out to "Petty Cash," in the amount of approximately $1,750.

5.      On or about July 23, 2010, **MANUEL R. FERNANDEZ** and J.F. caused a cash deposit, in the amount of approximately $5,200, to be made into BoA account xxxx-9950.

6.      On or about January 26, 2011, **MANUEL R. FERNANDEZ** signed an AVCOM commercial invoice billing an AVCOM customer located in Australia.

7.      On or about February 10, 2011, **MANUEL R. FERNANDEZ** submitted to the FAA and DOT an OGE Form 450-A "Confidential Certificate of No New Interests" falsely and fraudulently certifying, since his last yearly filing, that **FERNANDEZ** had: no new reportable assets and sources of income; no new reportable outside positions; no new reportable agreements and arrangements concerning future, current, and past non-Government employment; and no new reportable gifts or travel reimbursements.

8.      On or about August 22, 2011, **PATRICIA SUAREZ** sent an email to **MANUEL**

11

8.      On or about August 22, 2011, **PATRICIA SUAREZ** sent an email to **MANUEL R. FERNANDEZ** requesting various unauthorized OEM technical publications.

9.      On or about August 25, 2011, **PATRICIA SUAREZ**, utilizing AVCOM American Express account xxxx-3005, purchased an international cruise aboard the Carnival Destiny for **MANUEL R. FERNANDEZ**, in the amount of approximately $745.

10.     On or about August 28, 2011, **PATRICIA SUAREZ** sent an email to **MANUEL R. FERNANDEZ** which contained the cruise itinerary and departure date of on or about September 29, 2011.

11.     On or about November 7, 2011, **PATRICIA SUAREZ** and Rolando Suarez obtained AVCOM American Express credit card xxxx-2122 for **MANUEL R. FERNANDEZ**.

12.     On or about November 8, 2011, **MANUEL R. FERNANDEZ** made a purchase, totaling approximately $35, utilizing his assigned AVCOM American Express credit card xxxx-2122.

13.     On or about November 11, 2011, **PATRICIA SUAREZ** sent an email to Rolando Suarez confirming that **PATRICIA SUAREZ** and Rolando Suarez obtained AVCOM business cards for **MANUEL R. FERNANDEZ**.

14.     On or about November 21, 2011, **MANUEL R. FERNANDEZ** sent an email, utilizing the title of AVCOM "Vice President of Operations" and copying **PATRICIA SUAREZ** and Rolando Suarez, to an AVCOM customer that stated: "I am pleased to hear your AOG was resolv[ed] by us here at AVCOM.   We are here to support all your avionics needs with excellence. I would also like to personally extend an invitation to tour our facility here in Miami."

15.     On or about November 23, 2011, Rolando Suarez issued and caused to be cashed

AVCOM check #43655, which was made out to "Petty Cash," in the amount of approximately $1,700.

16.     On or about November 27, 2011, **PATRICIA SUAREZ**, utilizing AVCOM Citibank account xxxx-6024 and frequent flyer miles, purchased two (2) roundtrip airline tickets from Miami, FL, to Lima, Peru, for herself and **MANUEL R. FERNANDEZ**.

17.     On or about November 28, 2011, **MANUEL R. FERNANDEZ** caused a cash deposit, in the amount of approximately $800, to be made into JPMC account xxxx-5157.

18.     On or about December 1, 2011, **MANUEL R. FERNANDEZ** caused a cash deposit, in the amount of approximately $500, to be made into JPMC account xxxx-5157.

19.     On or about December 5, 2011, **MANUEL R. FERNANDEZ** caused a cash deposit, in the amount of approximately $500, to be made into JPMC account xxxx-5157.

20.     On or December 20, 2011, **MANUEL R. FERNANDEZ** made a purchase, totaling approximately $210, utilizing his assigned AVCOM American Express credit card xxxx-2122.

21.     On or about January 10, 2012, Rolando Suarez issued and caused to be cashed AVCOM check #43814, which was made out to "Petty Cash," in the amount of approximately $1,100.

22.     On or about January 17, 2012, **MANUEL R. FERNANDEZ** caused a cash deposit, in the amount of approximately $1,000, to be made into JPMC account xxxx-5157.

23.     On or about February 2, 2012, **MANUEL R. FERNANDEZ** submitted to the FAA and DOT an OGE Form 450 "Confidential Financial Disclosure Report" falsely and fraudulently certifying that **FERNANDEZ** had: no reportable assets and sources of income; no outside positions; no reportable agreements and arrangements; and no reportable gifts or travel

reimbursements.

24.     On or about February 13, 2012, **PATRICIA SUAREZ** issued and caused to be cashed AVCOM check #43966, which was made out to "Petty Cash," in the amount of approximately $2,715.

25.     On or about February 13, 2012, **PATRICIA SUAREZ** and Rolando Suarez issued and caused to be cashed AVCOM check #11327, which was made out to "Rolando J. Suarez," in the amount of approximately $2,299.75.

26.     On or about February 13, 2012, **MANUEL R. FERNANDEZ** caused a cash deposit, in the amount of approximately $700, to be made into JPMC account xxxx-4051.

27.     On or about February 17, 2012, **MANUEL R. FERNANDEZ** caused a cash deposit, in the amount of approximately $3,000, to be made into JPMC account xxxx-4051.

28.     On or about March 14, 2012, Rolando Suarez issued and caused to be cashed AVCOM check #44064, which was made out to "Petty Cash," in the amount of approximately $1,500.

29.     On or about March 15, 2012, **MANUEL R. FERNANDEZ** caused a cash deposit, in the amount of approximately $1,200, to be made into JPMC account xxxx-4051.

30.     On or about April 10, 2012, **PATRICIA SUAREZ** issued and caused to be cashed AVCOM check #44150, which was made out to "Petty Cash," in the amount of approximately $1,500.

31.     On or about April 11, 2012, **MANUEL R. FERNANDEZ** caused a cash deposit, in the amount of approximately $1,500, to be made into JPMC account xxxx-4051.

32.     On or about May 23, 2012, **MANUEL R. FERNANDEZ** sent an email to J.T.J.

requesting multiple unauthorized Honeywell OEM technical publications for AVCOM.

33.     On or about May 24, 2012, **MANUEL R. FERNANDEZ** received an email from J.T.J. discussing multiple unauthorized Honeywell OEM technical publications for AVCOM and which stated: "all but 34-21-23 & 34-28-22."

34.     On or about May 25, 2012, **MANUEL R. FERNANDEZ** received an email from J.T.J. discussing multiple unauthorized Honeywell OEM technical publications for AVCOM and which stated: "hg2001bc03."

35.     On or about August 15, 2012, Rolando Suarez sent an email to **MANUEL R. FERNANDEZ** requesting multiple unauthorized Honeywell OEM technical publications and which stated: "Manny here is the list again, the first one is the software thanks . . . ."

36.     On or about August 16, 2012, **MANUEL R. FERNANDEZ** sent an email to J.T.J. requesting the unauthorized Honeywell OEM technical publications set forth in the email in paragraph 57 and which stated: "Check [these] manuals too if you can. . . . Can you get this . . . please let me know."

37.     On or about August 17, 2012, **MANUEL R. FERNANDEZ** received an email from J.T.J. which provided multiple unauthorized Honeywell OEM technical publications and stated: "Below are the CMMs we have under p/ns below.   [T]he manual #s don't match.   I will ck Monday on card."

38.     On or about August 28, 2012, Rolando Suarez sent an email to **MANUEL R. FERNANDEZ** requesting multiple unauthorized Honeywell OEM technical publications and stated: "Manny I need your help with cmm's here are more that I need, let me know what you can do papo."

39.     On or about August 28, 2012, **MANUEL R. FERNANDEZ** sent an email to J.T.J. requesting the unauthorized Honeywell OEM technical publications set forth in the email in paragraph 38 and stated: "Let me know."

40.     On or about September 17, 2012, Rolando Suarez sent an email to **MANUEL R. FERNANDEZ** requesting multiple unauthorized Honeywell OEM technical publications and stated: "Manny I also need the following CMM below . . . And also remember the editable new EASA manual . . . ."

41.     On or about October 8, 2012, Rolando Suarez sent an email to **MANUEL R. FERNANDEZ** requesting multiple unauthorized Honeywell OEM technical publications and stated: "Manny what's up?    Man I desperately need the IRU manuals as well as the other manuals . . . any way if getting something or some of them done before this thurs?"

42.     On or about October 9, 2012, **MANUEL R. FERNANDEZ** sent an email to J.T.J. requesting the unauthorized Honeywell OEM technical publications in the email set forth above in paragraphs 40 and 41 and stated: "Check the two emails please, and let me know."

43.     On or about October 16, 2012, Rolando Suarez sent an email to **MANUEL R. FERNANDEZ** requesting multiple unauthorized Honeywell OEM technical publications and stated: "Manny what's up? . . . We still can't open the link, it looks like the website doesn't exist anymore??   Try it out and see what you think.   Let me know, lets hook up when you get a chance. Manny I just noticed due to the size of this email I had to reduce the amount of contents, I just sent one cmm with the links in question."

44.     On or about December 5, 2012, Rolando Suarez sent an email to **MANUEL R. FERNANDEZ** requesting multiple unauthorized Honeywell OEM technical publications and

stated: " Hi Manny, Below is an updated lists of the cmm's that I need don't worry about item 8d1. The most important ones are in gray but try to get the most you can."

45.     On or about January 11, 2013, **MANUEL R. FERNANDEZ** submitted to the FAA and DOT an OGE Form 450-A "Confidential Certificate of No New Interests" falsely and fraudulently certifying, since his last yearly filing, that **FERNANDEZ** had: no new reportable assets and sources of income; no new reportable outside positions; no new reportable agreements and arrangements concerning future, current, and past non-Government employment; and no new reportable gifts or travel reimbursements.

46.     On or about January 11, 2013, Rolando Suarez issued, and caused to be issued, a payment to J.F., via AVCOM check #45003, in the amount of approximately $386.56.

47.     On or about January 14, 2013, J.F. deposited, and **MANUEL R. FERNANDEZ** caused to be deposited, AVCOM check #45003 in the amount of approximately $386.56 into BoA account xxxx-7950.

48.     On or about January 15, 2013, **MANUEL R. FERNANDEZ** issued check #165, which was made out to J.T.J. via JPMC account xxxx-4501, in the amount of approximately $500.

49.     On or about January 18, 2013, **MANUEL R. FERNANDEZ** received an email from J.T.J. discussing a FAA airworthiness directive and Honeywell aviation equipment and stated: "I'm sure you have this but just in case – Ck p/n's.   Going to be in high demand."

50.     On or about January 22, 2013, **MANUEL R. FERNANDEZ** sent an email to Rolando Suarez, which contained the email set forth above in paragraph 49, and stated: "Rolando these are the two AD.   I will read them tomorrow and tell you exactly what is all about."

51.     On  or  about  January  30,  2013,  **MANUEL  R.  FERNANDEZ,  PATRICIA**

**SUAREZ,** and Rolando Suarez submitted, and caused to be submitted, to Paychex, AVCOM's payroll service provider, documents falsely and fraudulently establishing J.F. as an AVCOM employee.

52.     On or about February 6, 2013, **MANUEL R. FERNANDEZ** sent an email to J.T.J. requesting unauthorized Honeywell OEM technical publications and stated: "Let me know just add them to the program if you can.   Thanks in advance."

53.     On or about February 7, 2013, **MANUEL R. FERNANDEZ** sent an email to J.T.J. requesting unauthorized Honeywell OEM technical publications and stated: "I also need these manuals please."

54.     On or about February 8, 2013, **PATRICIA SUAREZ** and Rolando Suarez initiated, and caused to be initiated, an electronic AVCOM payment to J.F., in the amount of approximately $386.54, at BoA account xxxx-7950.

55.     On or about February 15, 2013, **PATRICIA SUAREZ** and Rolando Suarez initiated, and caused to be initiated, an electronic AVCOM payment to J.F., in the amount of approximately $386.53, at BoA account xxxx-7950.

56.     On or about February 15, 2013, **MANUEL R. FERNANDEZ** caused J.F. to make a cash withdrawal, in the amount of $760, from BoA account xxxx-7950.

57.     On or about February 19, 2013, **MANUEL R. FERNANDEZ** caused a cash deposit, in the amount of approximately $700, to be made into JPMC account xxxx-4051.

58.     On or about February 22, 2013, **PATRICIA SUAREZ** and Rolando Suarez initiated, and caused to be initiated, an electronic AVCOM payment to J.F., in the amount of approximately $386.54, at BoA account xxxx-7950.

18

59.     On or about February 23, 2013, **MANUEL R. FERNANDEZ** caused J.F. to issue BoA check #2538, which was made out to "Cash" via BoA account xxxx-7950, in the amount of approximately $1,545.

60.     On or about February 26, 2013, **MANUEL R. FERNANDEZ** caused BoA check #2538, in the amount of approximately $1,545, to be deposited into JPMC account xxxx-4051.

61.     On or about March 1, 2013, **PATRICIA SUAREZ** and Rolando Suarez issued, and caused to be issued, a payment to J.F., via personal Citibank check #3171, in the amount of approximately $1,100.

62.     On or about March 1, 2013, **PATRICIA SUAREZ** and Rolando Suarez initiated, and caused to be initiated, an electronic AVCOM payment to J.F., in the amount of approximately $814.61, at BoA account xxxx-7950.

63.     On or about March 2, 2013, **MANUEL R. FERNANDEZ** caused J.F. to deposit Citibank check #3171 into, and withdraw $900 from, BoA account xxxx-7950.

64.     On or about March 6, 2013, **MANUEL R. FERNANDEZ** sent an email to an AVCOM employee, copying **PATRICIA SUAREZ** and Rolando Suarez, regarding various requested unauthorized OEM technical publications and stating: "They are sending me the manuals tonight you'll have them tomorrow."

65.     On or about March 22, 2013, **PATRICIA SUAREZ** and Rolando Suarez initiated, and caused to be initiated, an electronic AVCOM payment to J.F., in the amount of approximately $386.54, at BoA account xxxx-7950.

66.     On or about March 28, 2013, **MANUEL R. FERNANDEZ** made a series of purchases, totaling approximately $95.94, utilizing his assigned AVCOM Citibank company credit

card xxxx-2769.

67.     On or about March 29, 2013, **PATRICIA SUAREZ** and Rolando Suarez initiated, and caused to be initiated, an electronic AVCOM payment to J.F., in the amount of approximately $1,621.21, at BoA account xxxx-7950.

68.     On or about April 5, 2013, **PATRICIA SUAREZ** and Rolando Suarez initiated, and caused to be initiated, an electronic AVCOM payment to J.F., in the amount of approximately $450, at BoA account xxxx-7950.

69.     On or about April 12, 2013, **PATRICIA SUAREZ** and Rolando Suarez initiated, and caused to be initiated, an electronic AVCOM payment to J.F., in the amount of approximately $386.54, at BoA account xxxx-7950.

70.     On or about April 17, 2013, **MANUEL R. FERNANDEZ** made a series of purchases, totaling approximately $117.13, utilizing his assigned AVCOM Citibank credit card xxxx-2769.

71.     On or about April 19, 2013, **PATRICIA SUAREZ** and Rolando Suarez initiated, and caused to be initiated, an electronic AVCOM payment to J.F., in the amount of approximately $589, which was deposited into BoA account xxxx-7950.

72.     On or about April 26, 2013, **PATRICIA SUAREZ** and Rolando Suarez initiated, and caused to be initiated, an electronic AVCOM payment to J.F., in the amount of approximately $386.54, at BoA account xxxx-7950.

73.     On or about May 1, 2013, **PATRICIA SUAREZ** issued, and caused to be issued, a payment to J.F., via AVCOM check #45429, in the amount of approximately $2,500.

74.     On or about May 2, 2013, **MANUEL R. FERNANDEZ** caused J.F. to deposit

$2,400, via AVCOM check #45429, into BoA account xxxx-7950.

75.     On or about May 3, 2013, **PATRICIA SUAREZ** and Rolando Suarez initiated, and caused to be initiated, an electronic AVCOM payment to J.F., in the amount of approximately $386.53, at BoA account xxxx-7950.

76.     On or about May 10, 2013, **PATRICIA SUAREZ** and Rolando Suarez initiated, and caused to be initiated, an electronic AVCOM payment to J.F., in the amount of approximately $386.54, at BoA account xxxx-7950.

77.     On or about May 16, 2013, **PATRICIA SUAREZ** issued, and caused to be issued a payment to J.F., via AVCOM check #45489, in the amount of approximately $2,500.

78.     On or about May 17, 2013, **PATRICIA SUAREZ** and Rolando Suarez initiated, and caused to be initiated, an electronic AVCOM payment to J.F., in the amount of approximately $505.21, at BoA account xxxx-7950.

79.     On or about May 18, 2013, **MANUEL R. FERNANDEZ** caused J.F. to deposit $2,500, via AVCOM check #45489, into BoA account xxxx-7950.

80.     On or about May 20, 2013, **MANUEL R. FERNANDEZ** caused J.F. to issue BoA check #2558 via account xxxx-7950, which was made out to **FERNANDEZ** in the amount of approximately $1,000.

81.     On or about May 22, 2013, **MANUEL R. FERNANDEZ** caused BoA check #2558, in the amount of approximately $1,000, to be deposited into JPMC account xxxx-4051.

82.     On or about May 23, 2013, **PATRICIA SUAREZ** sent an email to **MANUEL R. FERNANDEZ** and Rolando Suarez regarding various requested unauthorized OEM technical publications.

83.     On or about May 24, 2013, at approximately 2:51 p.m., **MANUEL R. FERNANDEZ** caused J.F. to travel to AVCOM, meet with him, and depart AVCOM at approximately 3:09 p.m.

84.     On or about May 24, 2013, **PATRICIA SUAREZ** and Rolando Suarez initiated, and caused to be initiated, an electronic AVCOM payment to J.F., in the amount of approximately $505.21, at BoA account xxxx-7950.

85.     On or about May 24, 2013, **MANUEL R. FERNANDEZ** caused J.F. to make a cash withdrawal, in the amount of approximately $6,780, from BoA account xxxx-7950.

86.     On or about May 24, 2013, **MANUEL R. FERNANDEZ** caused approximately $6,600 cash to be deposited into JPMC account xxxx-4051.

87.     On or about May 31, 2013, **PATRICIA SUAREZ** and Rolando Suarez initiated, and caused to be initiated, an electronic AVCOM payment to J.F., in the amount of approximately $386.53, at BoA account xxxx-7950.

88.     On or about June 7, 2013, at approximately 3:00 p.m., **MANUEL R. FERNANDEZ** travelled to AVCOM and met with **PATRICIA SUAREZ**.

89.     On or about June 7, 2013, **PATRICIA SUAREZ** issued, and caused to be issued, a payment to **MANUEL R. FERNANDEZ**, via AVCOM check #12251, in the amount of approximately $1,498

90.     On or about June 10, 2013, **MANUEL R. FERNANDEZ** caused AVCOM check #12251 to be cashed and approximately $1,000 to be deposited into JPMC account xxxx-4051.

91.     On or about June 11, 2013, **PATRICIA SUAREZ** issued, and caused to be issued, a payment to **MANUEL R. FERNANDEZ**, via AVCOM check #45577, in the amount of

92.     On or about June 11, 2013, **MANUEL R. FERNANDEZ** cashed AVCOM check #45577 and caused approximately $5,000 to be deposited into JPMC account xxxx-4051.

93.     On or about June 14, 2013, **PATRICIA SUAREZ** issued, and caused to be issued a payment to **MANUEL R. FERNANDEZ**, via AVCOM check #12265, in the amount of approximately $1,498.61.

94.     On or about June 14, 2013, **MANUEL R. FERNANDEZ** caused AVCOM check #12265, in the amount of $1,498.61, to be cashed.

95.     On or about June 14, 2013, **MANUEL R. FERNANDEZ** caused approximately $2,000 cash to be deposited into JPMC account xxxx-4051.

96.     On or about June 19, 2013, **MANUEL R. FERNANDEZ** issued a written resignation letter to the FAA South Florida FSDO which stated: "This is to advise you that I have accepted the position, with a company to be VP of Operation.   Accordingly, please regard this as my official letter of resignation.   My last day of work here will be June 28, 2013."

97.     On or about June 20, 2013, **MANUEL R. FERNANDEZ** caused J.F. to issue BoA check #2564, via BoA account xxxx-7950, in the amount of approximately $1,200.

98.     On or about June 20, 2013, **MANUEL R. FERNANDEZ** caused BoA check #2564, in the amount of approximately $1,200, to be deposited into JPMC account xxxx-4051.

99.     On or about June 21, 2013, **PATRICIA SUAREZ** issued, and caused to be issued, a payment to **MANUEL R. FERNANDEZ**, via AVCOM check #12279, in the amount of approximately $1,498.60, which was cashed.

100.    On or about June 21, 2013, **MANUEL R. FERNANDEZ** and **PATRICIA SUAREZ** caused AVCOM check #12279, in the amount of $1,498.61, to be cashed.

100.     On or about June 21, 2013, **MANUEL R. FERNANDEZ** and **PATRICIA SUAREZ** caused AVCOM check #12279, in the amount of $1,498.61, to be cashed.

101.     On or about June 24, 2013, **MANUEL R. FERNANDEZ** caused approximately $3,000 cash to be deposited into JPMC account xxxx-4051.

102.     On or about June 27, 2013, **MANUEL R. FERNANDEZ** caused J.F. to knowingly and willfully make materially false, fictitious, and fraudulent statements and representations to the FAA, DOT, and Federal Bureau of Investigation (hereinafter "FBI"), that she previously worked at AVCOM beginning in and around January 2013, that she worked at AVCOM approximately twenty-five (25) to thirty (30) hours per week from 4:30 p.m. to 9:30 p.m. doing janitorial work and filing and that she did not having any relatives, including **MANUEL R. FERNANDEZ**, that worked at AVCOM.

All in violation of Title 18, United States Code, Section 371.

**COUNTS 2-16**
**Bribery**
**(18 U.S.C. § 201(b)(1)(C))**

1.     Paragraphs 1 through 19 of the General Allegations, and the Manner and Means and Overt Acts sections set forth in Count 1, are re-alleged and incorporated by reference as through fully set forth herein.

2.     On or about the dates specified as to each count below, in Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the defendant,

**PATRICIA SUAREZ,**
**a/k/a "Patricia Bailly,"**
**a/k/a "Patricia Del Castillo,"**

did, directly and indirectly, corruptly give, offer, and promise anything of value to a public official

and to any other person, with intent to induce such public official to do an act and omit to do an act in violation of the lawful duty of such public official; that is, **PATRICIA SUAREZ**, directly and indirectly, corruptly gave, offered, and promised income, cash, and other things of value, to **MANUEL R. FERNANDEZ** and J.F., to induce **FERNANDEZ**, an FAA ASI, to provide AVCOM with unauthorized OEM technical publications, provide AVCOM with notice and warnings as to FAA inspections and investigations, disclose to AVCOM sensitive and confidential information as to AVCOM's competitors, and conceal and fail to report AVCOM legal, regulatory, and policy violations from the FAA, all as opportunities arose.

| COUNT | APPROX. DATE | THING OF VALUE |
|-------|--------------|----------------|
| 2 | 1/11/2013 | AVCOM payment for **MANUEL R. FERNANDEZ**, via check #45003 and made out to J.F. in the amount of approximately $386.53 |
| 3 | 2/8/2013 | AVCOM electronic payment for **MANUEL R. FERNANDEZ**, to J.F., in the amount of approximately $386.53 |
| 4 | 2/15/2013 | AVCOM electronic payment for **MANUEL R. FERNANDEZ**, to J.F., in the amount of approximately $386.53 |
| 5 | 3/29/2013 | AVCOM electronic payment for **MANUEL R. FERNANDEZ**, to J.F., in the amount of approximately $1,621.21 |
| 6 | 4/19/2013 | AVCOM electronic payment for **MANUEL R. FERNANDEZ**, to J.F., in the amount of approximately $589 |
| 7 | 5/1/2013 | AVCOM payment for **MANUEL R. FERNANDEZ**, via check #45429 and made out to J.F., in the amount of approximately $2,500 |
| 8 | 5/3/2013 | AVCOM electronic payment for **MANUEL R. FERNANDEZ**, to J.F., in the amount of approximately $386.53 |
| 9 | 5/10/2013 | AVCOM electronic payment for **MANUEL R. FERNANDEZ**, to J.F., in the amount of approximately $386.54 |

| COUNT | APPROX. DATE | THING OF VALUE |
|:-----:|:------------:|----------------|
| 10 | 5/16/2013 | AVCOM payment for **MANUEL R. FERNANDEZ**, via check #45489 and made out to J.F., in the amount of approximately $2,500 |
| 11 | 5/17/2013 | AVCOM electronic payment for **MANUEL R. FERNANDEZ**, to J.F., in the amount of approximately $505.21 |
| 12 | 5/24/2013 | AVCOM electronic payment for **MANUEL R. FERNANDEZ**, to J.F., in the amount of approximately $505.21 |
| 13 | 6/7/2013 | AVCOM payment to **MANUEL R. FERNANDEZ**, via check #12251 and made out directly to **FERNANDEZ**, in the amount of approximately $1,498 |
| 14 | 6/11/2013 | AVCOM payment to **MANUEL R. FERNANDEZ**, via check #45577 and made out directly to **FERNANDEZ**, in the amount of approximately $5,700 |
| 15 | 6/14/2013 | AVCOM payment to **MANUEL R. FERNANDEZ**, via check #12265 and made out directly to **FERNANDEZ**, in the amount of approximately $1,498.61 |
| 16 | 6/21/2013 | AVCOM payment to **MANUEL R. FERNANDEZ**, via check #12279 and made out directly to **FERNANDEZ**, in the amount of approximately $1,498.60 |

In violation of Title 18, United States Code, Sections 201(b)(1)(C) and 2.

## COUNTS 17-31
### Bribery
### (18 U.S.C. § 201(b)(2)(C))

1.      Paragraphs 1 through 19 of the General Allegations, and the Manner and Means and Overt Acts sections set forth in Count 1, are re-alleged and incorporated by reference as through fully set forth herein.

2.      On or about the dates specified as to each count below, in Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the defendant,

26

### MANUEL R. FERNANDEZ,

being a public official, did, directly and indirectly corruptly demand, seek, receive, accept, and

agree to receive and accept anything of value personally and for any other person, in return for

**FERNANDEZ** being induced to do an act and omit to do an act in violation of his official duty;

that is, **FERNANDEZ** corruptly demanded, sought, received, accepted, and agreed to receive and

accept from **PATRICIA SUAREZ** and Rolando Suarez income, cash, and other things of value,

personally and for any other person, in return for **FERNANDEZ** providing AVCOM with

unauthorized OEM technical publications and notice and warnings as to FAA inspections and

investigations, and disclosing confidential information as to AVCOM's competitors, and

concealing and failing to report AVCOM legal, regulatory, and policy violations from the FAA,

all as opportunities arose.

| COUNT | APPROX. DATE | THING OF VALUE |
|---|---|---|
| 17 | 1/11/2013 | AVCOM payment for **MANUEL R. FERNANDEZ**, via check #45003 and made out to J.F., in the amount of approximately $386.53 |
| 18 | 2/8/2013 | AVCOM electronic payment for **MANUEL R. FERNANDEZ**, to J.F., in the amount of approximately $386.53 |
| 19 | 2/15/2013 | AVCOM electronic payment for **MANUEL R. FERNANDEZ**, to J.F, in the amount of approximately $386.53 |
| 20 | 3/29/2013 | AVCOM electronic payment for **MANUEL R. FERNANDEZ**, to J.F., in the amount of approximately $1,621.21 |
| 21 | 4/19/2013 | AVCOM electronic payment for **MANUEL R. FERNANDEZ**, to J.F., in the amount of approximately $589 |
| 22 | 5/1/2013 | AVCOM payment for **MANUEL R. FERNANDEZ**, via check #45429 and made out to J.F., in the amount of approximately $2,500 |

| COUNT | APPROX. DATE | THING OF VALUE |
|-------|--------------|----------------|
| 23 | 5/3/2013 | AVCOM electronic payment for **MANUEL R. FERNANDEZ**, to J.F., in the amount of approximately $386.53 |
| 24 | 5/10/2013 | AVCOM electronic payment for **MANUEL R. FERNANDEZ**, to J.F., in the amount of approximately $386.54 |
| 25 | 5/16/2013 | AVCOM payment for **MANUEL R. FERNANDEZ**, via check #45489 and made out to J.F., in the amount of approximately $2,500 |
| 26 | 5/17/2013 | AVCOM electronic payment for **MANUEL R. FERNANDEZ**, to J.F., in the amount of approximately $505.21 |
| 27 | 5/24/2013 | AVCOM electronic payment for **MANUEL R. FERNANDEZ**, to J.F., in the amount of approximately $505.21 |
| 28 | 6/7/2013 | AVCOM payment to **MANUEL R. FERNANDEZ**, via check #12251 and made out directly to **FERNANDEZ**, in the amount of approximately $1,498 |
| 29 | 6/11/2013 | AVCOM payment to **MANUEL R. FERNANDEZ**, via check #45577 and made out directly to **FERNANDEZ**, in the amount of approximately $5,700 |
| 30 | 6/14/2013 | AVCOM payment to **MANUEL R. FERNANDEZ**, via check #12265 and made out directly to **FERNANDEZ**, in the amount of approximately $1,498.61 |
| 31 | 6/21/2013 | AVCOM payment to **MANUEL R. FERNANDEZ**, via check #12279 and made out directly to **FERNANDEZ**, in the amount of approximately $1,498.60 |

In violation of Title 18, United States Code, Sections 201(b)(2)(C) and 2.

## COUNT 32
### False Statements
### (18 U.S.C. § 1001(a)(2))

On or about January 11, 2013, in Miami-Dade and Broward Counties, in the Southern

District of Florida, and elsewhere, in a matter within the jurisdiction of the FAA and DOT, each

28

an agency of the executive branch of the United States Government, the defendant,

**MANUEL R. FERNANDEZ**,

did knowingly and willfully make a false, fictitious, and fraudulent statement and representation as to a material fact, in that the defendant represented to the FAA and DOT, by and through submitting OGE Form 450-A "Confidential Certificate of No New Interests," that since his 2012 filing, that he had, for himself, no new reportable assets and sources of income, no new reportable outside positions, no new reportable agreements and arrangements concerning future, current, and past non-Government employment, and no new reportable gifts or travel reimbursements, when, in truth and in fact, and as the defendant then and there well knew, due to his paid work and activities at AVCOM, the defendant had new reportable sources of income, a new reportable outside position, new reportable agreements and arrangements concerning future, current, and past non-Government employment, and new reportable gifts, in violation of Title 18, United States Code, Section 1001(a)(2).

### COUNTS 33-34
### WIRE FRAUD
### (18 U.S.C. § 1343)

1.      Beginning on or about June 4, 2013, and continuing through on or about June 25, 2013, in Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the defendant,

**MANUEL R. FERNANDEZ**,

did knowingly, and with intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that they were false and fraudulent when made, and

transmitted and caused to be transmitted in interstate commerce, by means of wire communication, certain writings, signs, signals, pictures and sounds, for the purpose of executing the scheme and artifice, in violation of Title 18, United States Code, Section 1343.

## PURPOSE OF THE SCHEME AND ARTIFICE

2.      It was the purpose of the scheme and artifice for the defendant to unlawfully enrich himself by, among other things: (a) submitting false and fraudulent paid sick leave requests in order to induce the DOT and FAA to pay the defendant's salary; (b) unlawfully utilizing means of identification of a real person victim in order to secure approval of the false and fraudulent sick leave requests; and (c) while falsely and fraudulently claiming paid sick leave from the DOT and FAA, working for AVCOM in violation of the defendant's lawful and official duties.

## THE SCHEME AND ARTIFICE

The defendant's scheme and artifice also included, among others, the following:

3.      On or about June 11, 2013, **MANUEL R. FERNANDEZ**, located in Miami-Dade County, and utilizing the FAA and DOT's Castle System, electronically submitted an 80-hour paid sick leave request for the pay period beginning on or about June 4, 2013, and continuing through on or about June 14, 2013.   The request contained numerous materially false and fraudulent statements, representations, and omissions relating to **FERNANDEZ's** health and ability to perform his lawful and official duties as an FAA ASI.   **FERNANDEZ** also materially omitted and concealed from the FAA and DOT that, from on or about June 4, 2013, and continuing through on or about June 14, 2013, he worked for AVCOM in violation of the defendant's lawful and official duties.

4.      On or about June 13, 2013, during and in relation to his sick leave request set forth above in paragraph 3, **MANUEL R. FERNANDEZ** also submitted to the FAA and DOT a

fictitious written doctor's note dated June 3, 2013, utilizing real person victim R.Z.'s name and forged signature without lawful authority, that falsely and fraudulently stated that **FERNANDEZ** suffered from "severe back pain" and required "rest two weeks."   Based on his materially false and fraudulent misrepresentations and omissions, the FAA and DOT approved **FERNANDEZ's** sick leave request on or about June 18, 2013.   On or about June 25, 2013, the FAA and DOT paid **FERNANDEZ** approximately $2,751.31 in salary.

**USE OF THE WIRES**

5.      On or about the dates specified as to each count below, the defendant, **MANUEL R. FERNANDEZ**, for the purpose of executing the above-described scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, did knowingly transmit and cause to be transmitted, by means of wire communication, in interstate and foreign commerce, certain writings, signs, signals, pictures and sounds, as more particularly described in each count below:

| COUNT | APPROX. DATE | DESCRIPTION OF WIRE COMMUNICATION |
|---|---|---|
| 33 | 6/25/2013 | Electronic DOT payment from Kansas City, MO, in the amount of approximately $2,401.31, to **FERNANDEZ's** JPMC account xxxx-4051 in Miami, FL. |
| 34 | 6/25/2013 | Electronic DOT payment from Kansas City, MO, in the amount of approximately $350.00, to **FERNANDEZ's** JPMC account xxxx-xxxx-5157 in Miami, FL. |

In violation of Title 18, United States Code, Sections 1343 and 2.

**COUNTS 35-36**
**AGGRAVATED IDENTIFY THEFT**
**(18 U.S.C. § 1028A(a)(1))**

On or about the date enumerated below, in Miami-Dade and Broward Counties, in the

31

Southern District of Florida, and elsewhere, the defendant,

**MANUEL R. FERNANDEZ**,

during and in relation to a felony violation of Title 18, United States Code, Section 1343, as

charged in Counts 33-34 of this Indictment, did knowingly transfer, possess, and use, without

lawful authority, the means of identification of another person, as specified below.

| COUNT | APPROX. DATE | MEANS OF IDENTIFICATION |
|-------|--------------|-------------------------|
| 35 | 6/13/2013 | Victim R.Z.'s name and forged signature during and in relation to Count 33. |
| 36 | 6/13/2013 | Victim R.Z.'s name and forged signature during and in relation to Count 34. |

In violation of Title 18, United States Code, Sections 1028A and 2.

## FORFEITURE
### (18 U.S.C. §§ 981(a)(1)(C))

1.      The allegations of this Indictment are re-alleged and by this reference fully

incorporated herein for the purpose of alleging forfeiture to the United States of America of certain

property in which one or more of the defendants, **PATRICIA SUAREZ, a/k/a "Patricia Bailly,"**

**a/k/a "Patricia Del Castillo,"** and **MANUEL R. FERNANDEZ** have an interest.

2.      Upon conviction of any of the offenses charged in Counts 1 through 31 and Counts

33 through 34 of this Indictment, the defendants, **PATRICIA SUAREZ, a/k/a "Patricia Bailly,"**

**a/k/a "Patricia Del Castillo,"** and **MANUEL R. FERNANDEZ** shall forfeit to the United States

any property, real or personal, which constitutes or is derived from proceeds traceable to such

violation.

32

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 28, United States Code, Section 2461(c).

A TRUE BILL

_____

_____
BENJAMIN G. GREENBERG
ACTING UNITED STATES ATTORNEY

_____
SEAN T. McLAUGHLIN
ASSISTANT UNITED STATES ATTORNEY

33

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

vs.

PATRICIA SUAREZ,
    a/k/a "Patricia Bailly,"
    a/k/a "Patricia Del Castillo,"
and

MANUEL R. FERNANDEZ,

                Defendants.
_____/

CASE NO. _____

# CERTIFICATE OF TRIAL ATTORNEY

**Superseding Case Information:**

| | | |
|---|---|---|
| New Defendant(s) | Yes _____ | No _____ |
| Number of New Defendants | _____ | |
| Total number of counts | _____ | |

**Court Division:** (Select One)

  **X**  Miami    _____  Key West
  _____  FTL    _____  WPB    _____  FTP

I do hereby certify that:

1.   I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.   I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.   Interpreter: (Yes or No)     Yes
    List language and/or dialect     Spanish

4.   This case will take   21-60   days for the parties to try.

5.   Please check appropriate category and type of offense listed below:

(Check only one)                     (Check only one)

| | | | | | |
|---|---|---|---|---|---|
| I | 0 to 5 days | _____ | Petty | _____ | |
| II | 6 to 10 days | _____ | Minor | _____ | |
| III | 11 to 20 days | _____ | Misdem. | _____ | |
| IV | 21 to 60 days | x | Felony | x | |
| V | 61 days and over | _____ | | | |

6.   Has this case been previously filed in this District Court? (Yes or No)   No
If yes:
Judge:                 Case No. _____
(Attach copy of dispositive order)
Has a complaint been filed in this matter? (Yes or No)   No
If yes:
Magistrate Case No.
Related Miscellaneous numbers:   16-20627-CR-MARTINEZ
Defendant(s) in federal custody as of _____
Defendant(s) in state custody as of _____
Rule 20 from the _____

Is this a potential death penalty case? (Yes or No)   No

7.   Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003? _____ Yes   x   No

8.   Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007? _____ Yes   x   No

SEAN T. McLAUGHLIN
ASSISTANT UNITED STATES ATTORNEY
Court No. A5501121

*Penalty Sheet(s) attached

REV 4/8/08

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. **17-20780** CR-COOKE

/GOODMAN

IN THE MATTER OF SEALED
CRIMINAL COMPLAINT

_____/

## CRIMINAL COVER SHEET

1.  Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003? _____ Yes ___X___ No

2.  Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007? _____ Yes ___X___ No


Respectfully submitted,

BENJAMIN G. GREENBERG
ACTING UNITED STATES ATTORNEY

By: _____
Sean T. McLaughlin
Assistant United States Attorney
Court ID No. A5501121
99 NE 4th Street, 8th Floor
Miami, Florida 33132
Phone: (305) 961-9013

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name**: **PATRICIA SUAREZ a/k/a "Patricia Bailly," a/k/a "Patricia Del Castillo"**

Case No: _____

Count #: 1

Conspiracy to Commit Offense Against the United States - Bribery

Title 18, United States Code, Sections 371, 201(b)(1)(C), & 201(b)(2)(C)

**\* Max. Penalty**:  5 Years' Imprisonment

Counts #: 2-16

Bribery

Title 18, United States Code, Section 201(b)(1)(C)

**\* Max. Penalty**: 15 Years' Imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:** <u>MANUEL R. FERNANDEZ</u>

**Case No:** _____

Count #: 1

<u>Conspiracy to Commit Offense Against the United States - Bribery</u>

<u>Title 18, United States Code, Sections 371, 201(b)(1)(C), & 201(b)(2)(C)</u>

**\* Max. Penalty:**   5 Years' Imprisonment

Counts #: 17-31

<u>Bribery</u>

<u>Title 18, United States Code, Section 201(b)(2)(C)</u>

**\* Max. Penalty:** 15 Years' Imprisonment

Count #: 32

<u>False Statements</u>

<u>Title 18, United States Code, Section 1001(a)(2)</u>

**\* Max. Penalty:** 5 Years' Imprisonment

Counts #: 33-34

<u>Wire Fraud</u>

<u>Title 18, United States Code, Section 1343</u>

**\* Max. Penalty:** 20 Years' Imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:** <u>MANUEL R. FERNANDEZ</u>

**Case No:** _____

Count #s: 35-36

<u>Aggravated Identity Theft</u>

<u>Title 18, United States Code, Section 1028A</u>

**\* Max. Penalty**: 2 Years' Imprisonment - consecutive to any other sentence

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**